1

2

3

4

5

6

7

8        UNITED STATES DISTRICT COURT
         WESTERN DISTRICT OF WASHINGTON
9        AT SEATTLE

10   GLEN SEBASTIAN BURNS,                    CASE NO. C14-850 MJP

11              Petitioner,                   ORDER ADOPTING REPORT AND
                                              RECOMMENDATION
12        v.

13   BERNARD WARNER,

14              Respondent.

15

16        The Court, having received and reviewed:

17        1.   Report and Recommendation (Dkt. No. 28),

18        2.   Objections to Report and Recommendation (Dkt. No. 33),

19        3.   Response to Petitioner's Objections to Report and Recommendation (Dkt. No. 34)

20   and all attached declarations, exhibits, and portions of the record, makes the following ruling:

21        IT IS ORDERED that the Report and Recommendation is ADOPTED; Petitioner's

22   federal habeas petition is DENIED and this action is DISMISSED with prejudice.

23        IT IS FURTHER ORDERED that a certificate of appealability is GRANTED.

24

**Background**

Petitioner, a state prisoner currently serving a sentence of life without possibility of parole, seeks relief under 28 U.S.C. § 2254 for his 2004 judgment and sentence.

A complete factual narrative of the crimes for which Petitioner was convicted, the covert operation conducted by the Royal Canadian Mounted Police ("RCMP") by which Petitioner was determined to be responsible for those crimes, and the criminal court procedures by which his guilt was adjudicated can be found in State v. Rafay, et al., 168 Wn.App. 734, 747-54 (Wash.Ct.App. 2012), the Washington Court of Appeals decision affirming his conviction.[1]  The Court has reviewed that opinion and the relevant portions of the record and summarizes the facts as follows:

Petitioner and his co-defendant, Atif Rafay, became the primary suspects in the murder of Rafay's family in Bellevue.  By the time the focus of the police investigation had narrowed to them, the two young men (who were 18 at the time of the murders) had crossed the border into Canada.  The RCMP had also opened their own investigation into whether the suspects had conspired to commit murder while in their jurisdiction. The RCMP investigation consisted of an undercover operation wherein two RCMP officers (Haslett and Shinkaruk) posed as members of a fictitious criminal organization and enlisted the two suspects in an attempt to obtain confessions to the killings.

The RCMP was successful in establishing contact with Petitioner and Rafay and in obtaining their participation in a series of small-scale criminal activities.  Over the course of the next several months, Haslett and Shinkaruk conveyed the impression that they were dangerous, violent men who were not above killing to obtain their ends and protect their "enterprise."

---

[1] This portion of the Washington Court of Appeals decision is also reproduced in the Report and Recommendation (Dkt. No. 28 at 2-6), and incorporated into this order by reference.

1  Despite attempts to draw him out, Petitioner (while admitting he was suspected of the Bellevue

2  homicides) resisted any overtures to confess his guilt.

3       Haslett (who was posing as the head of the criminal organization) conveyed to Petitioner

4  that he had access to information about the Bellevue investigation.  He told Petitioner that the

5  Bellevue police had physical evidence of Petitioner's involvement in the killings and that, if he

6  was going to help Petitioner further (specifically, make arrangements to destroy the evidence

7  implicating Petitioner), he needed more details about the crimes.  While Petitioner continued to

8  deflect attempts to elicit a confession, he was eventually presented with a falsified Bellevue

9  Police Department memo listing the items of evidence incriminating him and indicating that

10  charges were imminent.  After Haslett informed him that he could not arrange for destruction of

11  all the evidence against Petitioner unless he knew all the details of the crimes, Petitioner

12  admitted to his and Rafay's participation in the murders.

13       Following their arrest and extradition (a lengthy process the details of which are not

14  relevant here), the two men filed motions to suppress their confessions in state court.  Testimony

15  in that proceeding commenced on April 22, 2003 and concluded on August 6, 2003.  Following

16  denial of that motion, the case proceeded to trial; opening statements began on November 24,

17  2003, closing statements concluded on May 20, 2004 and the jury returned guilty verdicts on

18  May 26, 2004.  At their October 24, 2004 sentencing, both were sentenced to three terms of life

19  imprisonment without possibility of parole.  168 Wn.App. at 754.

20       The Washington Court of Appeals affirmed Petitioner's conviction on direct appeal.

21  State v. Rafay, *supra.*  The Washington Supreme Court denied review without comment.  State

22  v. Burns, 299 P.3d 1171 (Wash. 2013).  No writ of certiorari was filed with the U.S. Supreme

23  Court, and Petitioner has sought no further post-conviction review in state court.

24

1    Petitioner did file a petition for habeas corpus under § 2254, seeking relief on the solitary

2    ground that his confession was involuntary and obtained in violation of his federal constitutional

3    rights.  (Dkt. No. 5.)  In a Report and Recommendation, the Honorable James P. Donohue of this

4    district recommended that the petition be DENIED, and the action DISMISSED with prejudice;

5    the issuance of a certificate of appealability was also recommended.  (Dkt. No. 28.)

6                                    **Discussion**

7    <u>Standard of Review</u>

8    Any portions of the Report and Recommendation to which Petitioner objects are

9    reviewed *de novo*.  28 U.S.C. § 636(b)(1); *accord*, Rule 8(b), Rules Governing Section 2254

10   Cases.  That review is conducted under the limits set by the Anti-Terrorism and Effective Death

11   Penalty Act of 1996 ("AEDPA"), which requires this Court to defer to a state court's decision

12   regarding any claim adjudicated on the merits unless it is found that the state court's adjudication

13   of the claim:

14         1.  resulted in a decision that was contrary to, or involved an unreasonable
               application of clearly established Federal law, as determined by the Supreme
15             Court of the United States; or

16         2.  resulted in a decision that was based on an unreasonable determination of the
               facts in light of the evidence presented in the State court proceeding.
17

18   28 U.S.C. § 2254 (d)(1) and (2).  Furthermore, a state court's findings of fact are presumed to be

19   correct.  28 U.S.C. § 2254 (e)(1).

20   <u>Petitioner's Objections</u>

21   Although all of Petitioner's objections appear under the heading "The State Court of

22   Appeals decision is contrary to clearly established Supreme Court precedent" (Dkt. No. 33,

23   Objections at 8), it is apparent from a full reading of his briefing that his objections encompass

24

1  both prongs of the AEDPA test: i.e., arguments that Supreme Court precedent was ignored or

2  misread and that the State Court of Appeals unreasonably determined the facts of the case.

3      As a preliminary matter, this Court indicates its agreement with the Government's

4  argument that Petitioner is not actually arguing that the State Court of Appeals' decision was

5  "contrary to" established Supreme Court precedent.  As even Petitioner concedes, "the

6  Washington State Court of Appeals properly identified the governing Supreme Court precedent,

7  Arizona v. Fulminante."  (Id.)  Petitioner argues instead that Fulminante (and its predecessor,

8  Schneckloth v. Bustamonte, 412 U.S. 218 (1973)), were properly identified but not properly

9  applied, and this Court will review the state decision under the "unreasonable application"

10 clause.  Williams v. Taylor, 529 U.S. 362, 406 (2000).

11     Petitioner asserts that the State Court of Appeals unreasonably applied the Schneckloth

12 "totality of the circumstances" test (see 412 U.S. at 226) by failing to take into consideration two

13 factors.  One factor is the "positive inducements" which may have overborne Petitioner's will

14 and coerced him into his confession; in this case, "the lure of wealth, as well as the promised

15 destruction of evidence that could be used against the young boys in the United States."  (Dkt.

16 No. 33 at 9.)  Petitioner cites to Malloy v. Hogan, 378 U.S. 1, 7 (1964) for the principle that

17 "coercion… includes positive inducements."  (Objections at 9.)

18     But the standard announced in Malloy (forbidding admission of confessions obtained by

19 "any direct or indirect promise, however slight;" 378 U.S. at 7) is no longer the law.  The

20 Fulminante court specifically quoted that standard to observe that "under current precedent [it]

21 does not state the standard for determining the voluntariness of a confession."  (499 U.S. at 285.)

22 That standard, as Petitioner concedes, is the "totality of the circumstances" test and, in

23 examining whether the "lure of wealth" and the promise of the destruction of potentially

24

ORDER ADOPTING REPORT AND
RECOMMENDATION- 5

incriminating evidence were properly considered among the circumstances involved in Petitioner's confession, the Court's analysis is driven by two considerations.

First, Petitioner presents no evidence that he previously argued "positive inducements" as a circumstance to be considered by the state court in assessing the voluntariness of the confession. Indeed, the Court's review of the record indicates that, as the Attorney General of Washington argues, "[t]he Court of Appeals actually discussed and considered all of the inducements argued by the defendants. Exhibit 18, at 5-11; *id*. at 16-24." (AG's Response at 11.) The fact that neither the trial court findings nor the Washington Court of Appeals opinion addresses the issue of "positive inducement" inclines this Court to infer that the argument was not raised at the state level. Petitioner cites no case authority holding that the state court is obligated to consider every conceivable circumstance (positive and negative) surrounding a confession, regardless of whether Petitioner raised it before the court. How can the Court assign error on legal grounds which were not presented to the jurists against whom the assignment is sought?

Second, even laying aside the above misgivings, the "totality of the circumstances" test is driven by a primary consideration: were the circumstances such that the will of the accused was "over-borne"? (*See* Schneckloth, 412 U.S. at 226.) On the evidence before the Court, "the lure of wealth" cited by Petitioner does not rise to the level of coercion required – there is neither any evidence of the amounts of money promised, nor is there any evidence that Petitioner was in need of money. Neither does the promise to destroy potentially incriminating evidence appear from the record to carry the kind of weight which might overbear the will of a reluctant suspect. In discussing the fake memo with Haslett, Petitioner responds (correctly, in this Court's estimation) that much of the evidence discussed in the memo is capable of non-incriminating

1    explanations (Rafay, 168 Wn.App. at 763-64); i.e., in his conversation with Haslett, Petitioner

2    does not appear to believe that, but for the destruction of the evidence, his arrest and eventual

3    conviction for murder is a certainty.   These factors mitigate against a finding that the "positive

4    inducements" presented by the undercover officers operated to over-bear Petitioner's will and

5    produce an involuntary confession.[2]

6           The Court finds that the Washington Court appeals identified the governing legal

7    principle, weighed the factors before it and correctly found that "defendants made a deliberate

8    choice after weighing competing options, including their long-term personal goals, to accept the

9    assistance of another criminal to eliminate their legal problems."  (See Rafay, 168 Wn.App. at

10   765.)  The Court agrees with the Report and Recommendation that "[t]he court's weighing of the

11   totality of the circumstances was not objectively unreasonable."  (R&R at 27.)  The fact that

12   there appears to be no precedent regarding promises of the nature involved here (to destroy

13   evidence incriminating a suspect) leads the Court to find that reasonable jurists, in the absence of

14   Supreme Court guidance, could find that such a promise was not so coercive as to overbear

15   Petitioner's will.  The Court of Appeal's application of the correct legal standard was not

16   improper and therefore neither contrary to nor an unreasonable application of clearly established

17   federal law.  (See Lockyer v. Andrade, 538 U.S. 63, 69 (2003).)

18          The second factor which Petitioner asserts was overlooked or improperly evaluated by

19   the State Court of Appeals was his age and alleged immaturity.  Petitioner claims that his age and

20   maturity were not properly taken into consideration in the weighing of the totality of the

21   circumstances.  (Objections at 11.)

22   _____

23        [2] The Court also declines Petitioner's invitation to adopt the principle that a promise to destroy
     incriminating evidence is *per se* coercive or that police deceit automatically renders a confession inadmissible (*see*
     Objections at 9, fn.3 and 4).  The theories are grounded in either District Court precedent or appellate opinions not

24   originating in the Ninth Circuit, neither of which are controlling in this district.

1    Petitioner attempts to draw an analogy between his circumstances and those of the

2   defendant in <u>Fulminante</u>, who was 26 years old with a fourth grade education and "low average

3   to average intelligence" at the time of his confession.  (499 U.S. at 286, n.2.)   But Petitioner's

4   argument in this regard suffers from the same deficiencies identified by the Court of Appeals:

5   "[D]efendants do not identify any evidence in the record suggesting that their age, mental

6   abilities, education, emotional condition or specific personality traits left them unusually

7   vulnerable to coercive measure."  (<u>Rafay</u>, 168 Wn.App. 734- 763-64.)[3]  Petitioner attempts to

8   overcome this defect in his proof by arguing that his age, in and of itself, was sufficient to create

9   a circumstance of vulnerability, "because an 18-year-old boy simply lacks the ability to properly

10   use judgment."  (Objections at 11.)

11    There are a number of problems with this argument.  In the first place, at the time of the

12   confession, Petitioner was <u>not</u> "an 18-year-old boy;" he was nearly 20 (19 years, 10 months) and

13   had been living on his own for approximately two years.  He was not a "juvenile;" nor, contrary

14   to Petitioner's assertion, could he be accurately labeled an "adolescent."[4]

15    Secondly, the cases he cites in support of his position (<u>Miller v. Alabama</u>, 132 S.Ct. 2455

16   (2012); <u>Graham v. Florida</u>, 560 U.S. 48 (2010); <u>Roper v. Simmons</u>, 543 U.S. 551 (2005)) are

17   concerned, not with the admissibility of confessions under the Fifth or Fourteenth Amendment,

18   but with sentencing issues under the Eighth Amendment.  "'[I]f a habeas court must extend a

19   rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly

20   established at the time of the state-court decision."  <u>White v. Woodall</u>, 134 S.Ct. 1697, 1706

21   

22    [3] This Court would amend that observation to read "left them *in any way* vulnerable to coercive measures."
    [4] Petitioner claims, without citation to a specific passage, that the U.S. Supreme Court "has emphasized

23   research that fully demonstrates that adolescence does not end until the age of 25" (Objections at 12), but if he is
    arguing that this constitutes binding legal authority that anyone under 25 is automatically considered an adolescent

24   in the eyes of the law, he has failed to persuade this Court.

1 (2014)(quoting <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 666 (2004)).  Furthermore, the cases

2 were not cited in Petitioner's state briefs, rendering the state court's failure to adopt the position

3 even less suitable for "review."

4    Petitioner cites the <u>Miller</u> opinion for the proposition that "youth is a time of immaturity,

5 underdeveloped responsibility, impetuousness, recklessness and heedless risk-taking."

6 (Objections at 12, citing <u>Miller</u>, 132 S.Ct. 2455, 2458 (2012).)  If the Court were to presume this

7 in Petitioner's case, it would be doing so in the face of considerable evidence to the contrary.

8 The facts as they emerged in the wake of the confessions demonstrate a methodical, well

9 thought-out plan with considerable attention paid to creating an alibi and disposing of any items

10 which might connect Petitioner and his accomplice to the murders.  Rather than exhibiting a

11 reckless and heedless demeanor, Petitioner withstood not only three days of questioning by the

12 Bellevue police but repeated attempts by Haslett to elicit incriminating statements from him;

13 divulging his part in the homicides at what can only be regarded as the strategic moment when

14 he deemed it necessary in order to achieve his ends.  If Petitioner chose not to present evidence

15 of his youth and immaturity to the trial court, it may well be because the evidence demonstrated

16 none of the qualities of youthful immaturity which might have provided mitigating

17 circumstances for his decision to confess.

18    Indeed, the final nail in the coffin of Petitioner's "youthful immaturity" argument is the

19 evidence which was seen by the state courts which declined his request to suppress his

20 confession; namely, the videos of his encounters with the undercover officers during which he

21 described his involvement with the murder of the Rafays.  It is impossible to view that evidence

22 without being struck by Petitioner's calm, even jocular demeanor; the casual way in which he

23 describes taking the lives of three human beings and the complete absence of anything that might

24

be described as fear, desperation, intimidation or any quality suggestive of coercion or a forced, involuntary revelation.  Petitioner has his own particular slant on what is revealed in the videos of him interacting with the undercover officers:

> The fact that the boys were willing to speak so easily with Mr. Big, had no problem telling the criminal organization that they were not going to do criminal acts for so little money, and their sense of bravado and machismo in light of the supposed criminal actors in front of them fully demonstrates that the boys were acting immaturely and making poor judgments.  In addition, any video depiction of Mr. Burns at 18[5] seeming "calm" and/or "jovial" while speaking about the murders in light of the situation also fully demonstrates immaturity.

Objections at 13-14.

The Court will simply observe that everyone is entitled to their opinion, and needless to say the state courts were not obligated to adopt Petitioner's.  It was not objectively unreasonable for a court reviewing the audiovisual evidence of Petitioner's conduct to conclude that his relaxed and calm demeanor were symptomatic of a young man who was not feeling intimidated, pressured or coerced.  Petitioner has failed to demonstrate that the state courts' failure to consider his age as categorically indicative of an inability to voluntarily confess to his crimes represents a repudiation of the "totality of the circumstances" test or a violation of his Fifth and Fourteenth Amendment rights.

Petitioner next argues that the trial court failed to follow <u>Fulminante</u> "by listening to tapes and testimony and then determin[ing] under the totality of the circumstances whether the statements were coerced."  (Objections at 16.)  If one were only to read Petitioner's briefing, one would be left with the impression that the trial court's rejection of the motion to suppress the confessions was based solely on the facts that (1) Petitioner was a Canadian citizen and (2) the

---

[5] As previously mentioned, Petitioner was nearly 20 years old at the time the July 1995 videos were recorded.

1   Canadian courts were untroubled by the circumstances under which his confession was obtained.

2   The argument ignores the four months of testimony and evidence heard by the trial court and

3   selectively overlooks the clear indications on the record that the trial court was aware of and

4   guided by federal constitutional principles.  From the oral ruling of the state court at the

5   conclusion of the suppression proceedings: "The defendants clearly enjoy the protections of the

6   U.S. Constitution, the Fifth, Sixth and the Fourteenth Amendment, insofar as due process.  Were

7   defendants' rights under these laws violated?  The court's answer is no."  (Gov. Ex. 61 at 22.)

8   And, from the state court's written conclusions of law:

9           The defendants [*sic*] statements and admissions to undercover RCMP officers
            during the course of the undercover scenarios were not the product of coercion or
10          duress and their admission into evidence will not violate the defendants' due
            process rights, right to counsel or right against self incrimination by the State and
11          Federal Constitutions.  The statements at issue were made in a non-custodial
            setting.  The defendants were free to leave or not to leave.  The defendants were
12          free to speak or not to speak.  The defendants were free to consult their Canadian
            counsel or not as they chose.  (Gov. Ex. 2, Conclusion of Law No. 6 at 9.)
13

14          This Court agrees with the Court of Appeals: "It is apparent that the trial court considered

15   and resolved the claim of coercion independently under the Fifth and Fourteenth Amendments.

16   The court's expression of agreement with the Canadian court's conclusion does not reflect a

17   failure to apply the proper legal standard."  (Rafay, 168 Wn.App at 766.)  Similarly, the Court

18   finds no fault with the State Court of Appeals' review of the Superior Court record and

19   application of the "totality of the circumstances" test to determine that Petitioner's confession

20   was not involuntary.  This determination was neither contrary to, nor an unreasonable application

21   of clearly established federal law as announced by the United States Supreme Court.

22          Finally, Petitioner contends that while the Report and Recommendation correctly

23   assessed that Haslett presented a credible threat of violence, the Magistrate Judge erroneously

24

ORDER ADOPTING REPORT AND
RECOMMENDATION- 11

1  found that Petitioner's confession was not in response to that threat.  The Court has reviewed the

2  record and agrees with the Magistrate Judge's conclusion.

3        There is no question that Haslett sought to create the impression that he would either kill

4  Petitioner or have him killed if Petitioner betrayed him.  Nor is there any question that Petitioner

5  believed that, if he betrayed Haslett, he would be killed.  (*See* AR, Ex. 72 at 80-85, 90-92

6  (transcript of June 28-29, 1995 recording); *see also* Dkt. No. 19, Ex. 64 at 53 (transcript of July

7  18, 1995 recording).)  Petitioner seeks to transmute this evidence into a belief that he would be

8  killed *if he were arrested*; i.e., that the possibility that he would betray Haslett under the pressure

9  of a homicide prosecution was sufficiently assured that the mere fact of his arrest would be

10 enough to result in his death, and thus that the fear of death coerced his confession.

11       There are two problems with this theory.  First and foremost, the record is devoid of any

12 evidence that would support it. Petitioner does not provide a single citation to the volume of

13 evidence surrounding the investigation into his involvement in the Rafay murders wherein

14 Haslett (or anyone) stated that "If you are arrested, you will be killed."

15       Petitioner argues in his Objections: "The boys were led to believe that if they were

16 arrested, they would be killed to ensure they did not share with authorities information they had

17 learned about the organization."  (Objections at 22.) The evidence does not support that

18 assertion; in fact, the citations provided by Petitioner in support of this argument (which are

19 simply the testimony of the undercover officers under cross-examination, not any direct quotes

20 from conversations with Petitioner) establish only that Petitioner was given the general

21 impression that Haslett and Shinkaruk were violent men who were not above killing to achieve

22 their ends.  Nothing in the record supports a finding that Petitioner was told or believed that

23 getting arrested was the equivalent of a death sentence at Haslett's hands.

24

1    Such evidence as does exist demonstrates a threat conditioned on the act of betrayal.  And

2    Petitioner goes to some lengths to allay any such fears on Haslett's part.  During their

3    conversation on June 28-29, 1995, Petitioner told Haslett "[Y]ou're not gonna go down, because

4    economically speaking if you go down I'm dead (LAUGHS) so therefore you never go down,

5    that's your power."  (AR, Ex. 72 at 136-37.)

6    Secondly, the evidence does not support the *inference* that this was the case.  Petitioner

7    wants the Court to assume that Petitioner believed the mere possibility that he might betray

8    Haslett (in the event of his arrest) would be the equivalent of a death sentence.  Since that

9    possibility (that Petitioner might decide to betray Haslett) existed at every moment during their

10   relationship – regardless of whether Petitioner was in custody -- it would be reasonable to expect

11   some evidence from their hours of conversations to indicate that Petitioner lived in constant fear

12   of death at Haslett's hands.  Petitioner has cited none and in fact the evidence reveals the

13   opposite – in all their encounters, Petitioner appears relaxed and at ease in Haslett's company.

14   Even when he discusses his understanding that Haslett would have him killed if he were to

15   betray him, he does so in a joking manner.

16   <u>Certificate of Appealability</u>

17   This Court agrees with the Report and Recommendation that Petitioner has satisfied the

18   requirements for a certificate of appealability "by demonstrating that jurists of reason could

19   disagree with the district court's resolution of his constitutional claims or that jurists could

20   conclude the issues presented are adequate to deserve encouragement to proceed further."

21   <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003).  Petitioner is entitled to a certificate of

22   appealability pursuant to 28 U.S.C. § 2253(c)(3) on the single claim asserted in his petition.

23

24

ORDER ADOPTING REPORT AND
RECOMMENDATION- 13

1

**Conclusion**

2          Petitioner has failed to establish that the circumstances of his cases are analogous to those

3   in Fulminante, or that the State Court of Appeals unreasonably applied clearly established federal

4   law in determining that his confession was not the result of coercion.  His petition for habeas

5   relief is DENIED, and his matter will be DISMISSED with prejudice.  A certificate of

6   appealability pursuant to 28 U.S.C. § 2253(c)(3) is GRANTED.

7          The clerk is ordered to provide copies of this order to all counsel.

8          Dated this 16th day of December, 2015.

9

10

11

                              Marsha J. Pechman
12                            United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

ORDER ADOPTING REPORT AND
RECOMMENDATION- 14